CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 3 0 2008

JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GEORGE W. WILLIS,<br>Petitioner, | )<br>) Civil Action No. 7:08-cv-00490<br>) |
| v. | ) **MEMORANDUM OPINION**<br>) |
| UNKNOWN DEFENDANTS,<br>Respondent. | ) By: Hon. Glen E. Conrad<br>) United States District Judge<br>) |

Petitioner George W. Willis, a Virginia inmate proceeding pro se, brings this action as a "petition for writ of habeas corpus and emergency injunctive relief." He complains of living conditions at the Southwestern Virginia Regional Jail ("the jail") and at the mental hospital where he was subsequently detained and challenges the validity of his confinement. Upon consideration of the petition, the court is of the opinion that it should be summarily dismissed without prejudice.

## I. Background

Willis alleges the following events from which his claims are based. On Wednesday, August 20, 2008, police officers in Big Stone Gap, Virginia, arrested Willis on charges of stalking and intent to commit serious bodily harm. Officers booked Willis and took him before a magistrate, who denied him release on bond. Around midnight, officers transported him to the jail in Duffield. Willis complains that the transport vehicle was too cramped and aggravated his tendencies toward claustrophobia, stress, and stroke. In the jail's holding cell, he asked for, but was denied, pencil and paper. Finally, he found something to write with, scribbled his initial petition on eight feet of white toilet paper, and mailed it to the court in a triangular envelope crafted from the cover of the jail's policy handbook and sealed with a cocktail of shampoo, toothpaste, and deodorant.

1

A. The Initial Pleading[1]

The toilet paper pleading sets forth a jumble of complaints. When Willis began having a seizure, a nurse put ammonia down his nose, nearly suffocating him. Willis was denied his medications, despite a litany of medical problems (diabetes, stroke-prone, seizure-prone, high blood pressure, gout, hypertension, lower body pain, prosthetic ankle support, cardiovascular problems, heart arterial blockage, recent angioplasty to put stints in two blocked arteries, and incontinence. He asserts that officials at the jail did not provide him with Bayer aspirin (to prevent cardiovascular problems) and medications for seizures, stroke, blood pressure, gout, joint and back pain, and medical assistance regarding incontinence. While at the jail, he did not get crutches or prosthetic support for his ankle, gout, and knee problems, or receive an orthopedic examination regarding these problems. The cells at the jail have concrete bunks, "not compatible with people with back and joint problems." The cells also have no intercoms to call for help if one has serious medical problems. Cells are key-locked, so guards cannot electronically open a cell in the event of a life-threatening medical problem or fire. Willis was transferred to a medical segregation cell, with no emergency call buttons and very irregular and infrequent checks from jail personnel. In segregation, Willis was denied not only his medications, but also a diet compatible with his health problems. Willis decided to fast and meditate in accordance with his Pentacostal religious beliefs. During the night of August 22-23, 2008, Willis felt faint and feared he was having a stroke. He pounded on the window, the nurse came to the door and looked in,

---

[1] The toilet paper pleading was the first "document" that Willis mailed to the court, according to his own chronology. It was not received by the court until other submissions had been docketed. Because the initial document that the court received did not name any individual or entity as an opposing party, the court styled the case as being against "unnamed defendants." Later submissions did name individuals and entities against whom Willis wishes to lodge his complaint. However, as the court herein construes the submissions, jointly, as a petition for a writ of habeas corpus and cannot determine from the record who the appropriate respondent would be in such an action, the case will remain styled as Willis v. Unnamed Defendants.

2

but then went back to bed. In short, Willis states that his health care at the jail "was non-existant (99.9%) to inadequate." He alleges that he is non-verbal LD (learning disabled) and ADD (Attention Deficit Disorder) and is "partially legally blind." He states that he "requires assistance such as visual aids, word processing, typewriter, computer, printer, large print, person to assist in reading documents, such as an attorney." On August 22, 2008, officers asked Willis to sign some documents and indicated that Willis was refusing to sign. Willis states that he never received a signed copy of the criminal complaint against him and apparently since the complainants had not signed, he also refused to sign.

B. August 28, 2008 Petition

This submission was the first received by the court and was entitled "Petition for Habus [sic] Corpus and Emergency Injunctive Relief." It inquired whether the court had yet received Willis's toilet paper pleading. This pleading also provided details about his arrest and incarceration at the jail, accused jail officials of refusing to provide him with pen and paper, offered other complaints about medical care and living conditions at the jail, and informed the court that jail officials had moved him to the Southwestern Virginia Mental Health Institute ("SVMHI") on August 23, 2008. He admitted that conditions were better that SVMHI, but still argued that he was being wrongfully held. He asked the court "to declare jurisdiction . . . and appoint bond." He also sought an injunction against the police chief for "harrassment of [his] person," an investigation of county police officers, and civil and criminal charges against those officers. Finally, he stated his request for "an order of my release from any and all facilities."

C. September 8 and 11, 2008 Petitions

The pleading received on September 8, 2008, was styled as a "Writ of Habus [sic] Corpus; Emergency Injunctive Relief," naming numerous individuals and entities as respondents. It gives a

3

numbered list of alleged constitutional wrongs Willis suffered, including denial of access to the court or an attorney, denial of the right to arraignment, speedy trial, and the right to confront one's accusers, denial of due process, cruel and unusual punishment, and being held without charge. Both the September 8 and 11, 2008 pleadings also accuse officers at the jail of destroying the toilet paper pleading.

## II. Discussion

A district court is not constrained by a petitioner's style of pleading or request for relief. Hamlin v. Warren, 664 F.2d 29 (4th Cir. 1981). To determine whether an action is properly considered a civil rights complaint or a habeas corpus petition requiring exhaustion of state remedies pursuant to § 2254, a court must consider whether the "core" of the litigant's claim concerns the fact or duration of his confinement. Todd v. Baskerville, 712 F.2d 70, 71-72 (4th Cir. 1983). If the core of the complaint does so concern the fact or length of confinement, then the pleading is properly considered as a habeas petition. Id. (citing Preiser v. Rodriguez, 411 U.S. 475, 489 (1973)).

In all of his submissions, Willis primarily seeks, as relief, his release from confinement. He uses the term "writ of habeas corpus" in the title of each pleading and repeatedly states, in various forms, his belief that he is being wrongfully held without charge or appropriate procedural protection. At no point does Willis indicate that he wishes to recover monetary damages for the conditions of which he complains; rather, he wishes to be free of the challenged conditions altogether. Liberally construing his submissions, the court concludes that they constitute, in the aggregate, a petition for a writ of habeas corpus by a person in state custody.

Because the record does not indicate that Willis is confined pursuant to the judgment of a state court at this time, the court will construe his petition as one arising under 28 U.S.C. § 2241. This

4

section applies to any person who claims to be confined in violation of the Constitution or laws of the United States, whether that confinement is under federal or state law, or criminal or civil law. Only after a person in state custody has exhausted all available state court remedies can he seek federal habeas review of his detention. See Braden v. 30th Judicial Circuit, 410 U.S. 484, 489-92 (1973). The burden of proving that a claim has been exhausted lies with the petitioner. Mallory v. Smith, 27 F.3d 991, 994 (4th Cir. 1994). The exhaustion requirement is satisfied by seeking review of the claim in the highest state court with jurisdiction to consider the claim. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999). In Virginia, that court is the Supreme Court of Virginia. Va. Code. § 8.01-654.

In this case, the simple timing of Willis's submissions indicates that he could not have presented his claims concerning wrongful confinement to any state court before filing his petitions in this court. Moreover, as his own allegations indicate that he is no longer housed in the jail, any claim he may have had for entitlement to release from that facility is now moot. In short, the petitioner's failure to exhaust his state court remedies before bringing his claims before this court mandates summary dismissal of his petition without prejudice.[2] An appropriate final order will be entered this day.

The clerk shall send copies of this memorandum opinion and final order to petitioner.

ENTER: This 30th day of SEPTEMBER, 2008.

*[signature]*

United States District Judge

---

[2] Willis may refile his petition in this court once he has exhausted his state court remedies, as outlined above. On the other hand, if Willis seeks monetary damages based on the allegedly unconstitutional living conditions under which he was incarcerated at the jail, he may file a civil rights action, pursuant to 42 U.S.C. § 1983, against the individual officers who committed those violations.

5